**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| **KEITH M. BELL,** )<br>    Plaintiff )<br>)<br>v. )<br>)<br>)<br>**MICHAEL J. ASTRUE**, )<br> **Commissioner of Social Security,** )<br>    Defendant ) | Civil Action No. 2:07cv00061<br>**REPORT AND<br>RECOMMENDATION**<br><br>By: PAMELA MEADE SARGENT<br>UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Keith M. Bell, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) (West 2003 & Supp. 2008). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bell filed his applications for SSI[1] and DIB on June 28, 2004, alleging disability as of August 1, 2003, due to degenerative disc disease, bilateral foot problems and arthritis. (Record, ("R."), at 59-61, 97.) The claims were denied initially and upon reconsideration. (R. at 31-33, 308-10, 315-17.) He then requested a hearing before an administrative law judge, ("ALJ"). (R. at 36.) The ALJ held a hearing on July 6, 2006, at which Bell was represented by counsel. (R. at 329-68.)

By decision dated December 5, 2006, the ALJ denied Bell's claims. (R. at 16-26.) The ALJ found that Bell met the disability insured status requirements of the Act for DIB purposes through December 31, 2007. (R. at 18.) The ALJ found that Bell had not engaged in substantial gainful activity since August 1, 2003. (R. at 18.) The ALJ found that the medical evidence established that Bell had severe impairments, namely degenerative disease of the lumbar spine, bilateral foot and ankle disorders, enchondroma[2] of the left hand and major depressive disorder, but he found that Bell did not have an impairment or combination of impairments that met or medically

---

[1]Bell's SSI application is not contained in the record.

[2]Enchondroma is a benign growth of cartilage arising in the metaphysis of a bone. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 551 (27th ed. 1988.)

-2-

equaled one of the listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) The ALJ found that Bell had the residual functional capacity to perform simple, routine sedentary work[3] that did not require close coordination with others or that did not require him to climb ladders, ropes or scaffolds and only occasionally climb stairs and ramps, stoop, bend or crouch. (R. at 19-20.) The ALJ also found that Bell was limited to 4/5 grip strength in his left, nondominant hand. (R. at 20.) Thus, he found that Bell was unable to perform any of his past relevant work. (R. at 24.) Based on Bell's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Bell could perform, including those of a sedentary vehicle operator, a mechanical assembler and a production inspector. (R. at 24-25.) Thus, the ALJ concluded that Bell was not under a disability under the Act and was not eligible for DIB or SSI benefits. (R. at 26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

After the ALJ issued his decision, Bell pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 5-9.) Bell then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). The case is before this court on Bell's motion for summary judgment filed March 31, 2008, and the Commissioner's motion for summary judgment filed June 18, 2008.

---

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2008).

## II. Facts

Bell was born in 1960, which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2008). (R. at 59, 335.) He has a high school education. (R. at 335.) Bell has past work experience as a staff sergeant in the Air Force, a material controller, a youth counselor, a career coach and a stocker. (R. at 76, 335, 347-48.) Bell testified that he did not drive often because of pain in his hands and feet. (R. at 336.) He stated that he experienced side effects from his medications, such as fatigue and difficulty concentrating and completing tasks. (R. at 336.) Bell stated that he could stand for up to 25 minutes without experiencing pain. (R. at 338-39.) He stated that he could lift items weighing up to 10 pounds. (R. at 346.) Bell stated that he could sit for up to 45 minutes without interruption. (R. at 346.)

Barry S. Hensley, a vocational expert, also was present and testified at Bell's hearing. (R. at 357-68.) Hensley was asked to consider an individual who could lift and carry items weighing up to 10 pounds occasionally and less than 10 pounds frequently, who could stand or walk approximately six hours in an eight-hour workday, who had no limitations on his ability to sit, who could occasionally stoop or bend and crouch and who was limited to 4/5 grip strength in the left hand. (R. at 362.) Hensley stated that such an individual could perform Bell's past work as a student tutor/mentor, as it is generally performed. (R. at 362.) Hensley was asked to consider a hypothetical individual of Bell's age, education and work history who was restricted as previously mentioned. (R. at 362.) Hensley testified that a significant number of jobs existed that such an individual could perform, including jobs as an order clerk, an amusement attendant and a vehicle operator, all at the light level of

exertion. (R. at 362-63.) Hensley was then asked to assume that the individual could not climb ladders or scaffolds, could only occasionally climb stairs or ramps and could perform simple, routine work that did not require close coordination with others. (R. at 363-64.) Hensley testified that the jobs of mentor and order clerk would be eliminated, but that the individual could perform jobs as a hand packer, a gate attendant and an amusement attendant. (R. at 365.) Hensley was asked to consider that the same individual would be limited to sedentary jobs with no climbing of ladders, ropes or scaffolds and only occasional climbing of stairs and ramps, who could occasionally stoop, bend and crouch, who was limited to 4/5 grip strength in the left hand and who could perform only simple, routine work that did not require close coordination with others. (R. at 365-67.) Hensley stated that there would be jobs available such as a vehicle operator, a mechanical assembler and a production inspector, that such an individual could perform. (R. at 366.)

In rendering his decision, the ALJ reviewed records from Southside Community Hospital; Dr Brent Miller, M.D.; Dr. Syed S. Hassan, M.D., a state agency physician; Dr. Alston W. Blount Jr., M.D., a state agency physician; Marcia Grenell, Ph.D., a state agency psychologist; Alan D. Entin, Ph.D., a state agency psychologist; Department of Veterans Affairs; and Charlotte Primary Care. Bell's attorney submitted additional records from the Department of Veterans Affairs to the Appeals Council.[4]

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-5-

On February 26, 2004, Bell was seen at the Veterans Affairs Medical Center, ("VA Center"), for complaints of low back pain. (R. at 246-47.) He reported some radiation into the left leg and ankle, as well as intermittent numbness. (R. at 246.) Bell ambulated with a limp. (R. at 246.) Review of Bell's MRI showed an L5-S1 degenerated disc and mild bulging on the left side. (R. at 246-47, 292.) On March 23, 2004, Bell complained of bilateral foot pain. (R. at 243.) An MRI of Bell's feet was unremarkable. (R. at 244.) On March 24, 2004, Bell was diagnosed with occult arthritis of the left metatarsophalangeal joints. (R. at 242.) On April 23, 2004, Bell complained of left foot and ankle pain. (R. at 242.) Bell had normal range of motion of his left foot and ankle. (R. at 242.) On August 16, 2004, Bell complained of depression and agitation. (R. at 226.) He was diagnosed with recurrent major depressive disorder, hypercholesterolemia[5] and arthritis. (R. at 228.) A Global Assessment of Functioning score, ("GAF"),[6] of 60[7] was assessed. (R. at 228.)

On February 25, 2005, an MRI of Bell's lumbar spine showed a mild central disc bulge at the L4-L5 and L5-S1 levels with mild neuroforamina narrowing on the left and bilateral facet hypertrophy at the lumbosacral junction. (R. at 231-32.) No significant impingement upon the nerve roots was noted. (R. at 232.) On October 18, 2004, Bell complained of depression and irritable mood associated with chronic back

---

[5]Hypercholesterolemia is the excess of cholesterol in the blood. *See* Dorland's at 791.

[6]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[7] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

pain and immobility. (R. at 202.) He was diagnosed with pain disorder associated with both psychological factors and a general medical condition and dysthymic disorder. (R. at 202.) Bell was assessed a GAF score of 60. (R. at 203.) On November 2, 2004, Bell reported little change in his mood or behavior. (R. at 196.) His mood was depressed and pessimistic. (R. at 197.) His judgment was intact. (R. at 197.) It was reported that Bell's depression was associated with chronic pain, inactivity and inadequate social support. (R. at 197.) He was diagnosed with pain disorder associated with both psychological factors and a general medical condition and dysthymic disorder. (R. at 197.) His GAF score was assessed at 55. (R. at 197.)

On March 3, 2005, Bell was seen at the VA Center for complaints of low back pain with left lower extremity weakness. (R. at 181-82.) A lumbar MRI showed a mild central disc bulge at the L4-L5 and L5-S1 levels, with no significant impingement on the nerve roots. (R. at 182, 184-85.) Bell reported slight improvement with his symptoms of depression. (R. at 186.) He was diagnosed with depression and recurrent major depressive disorder. (R. at 186.) It was assessed that Bell had a then-current GAF score of 60. (R. at 186.) On March 14, 2005, Bell complained of left index finger pain. (R. at 180.) Bell had no signs of swelling or erythema. (R. at 180, 183.) He had good range of motion and grip strength. (R. at 180, 183.) X-rays showed a lesion consistent with an enchondroma of the index finger of the left hand. (R. at 180, 183.) On March 29, 2005, x-rays of Bell's lumbar spine were normal. (R. at 122-23.) X-rays of Bell's left hand showed a healed fracture of the proximal phalanx of the index finger and a residual lytic lesion with some increased sclerosis, which was noted to probably being related to the prior healing fracture. (R. at 122.) On May 16, 2005, Bell reported that his depression was under control. (R.

at 177.) He reported that he was seeking employment. (R. at 177.) An EMG and nerve conduction study were normal. (R. at 179-80.) It was recommended that Bell continue pain management and physical therapy. (R. at 180.)

On June 13, 2005, x-rays of Bell's right hand suggested some partial subluxation at the first metacarpal phalangeal joint. (R. at 158.) X-rays of Bell's left hand showed a lucent lesion at the proximal base of the proximal phalanx of the second digit. (R. at 158.) The lesion showed bony expansion and internal chondroid matrix. (R. at 158.) X-rays of Bell's right foot and ankle showed a small bony density consistent with an accessory ossificiation center and mild degenerative changes and hallux valgus at the first metatarsophalangeal joint. (R. at 158.) X-rays of Bell's left ankle showed thickening of the Achilles tendon in its mid-section and two small calcifications within the Achilles tendon. (R. at 158.) Very mild hallux valgus was seen at the first metatarsophalangeal joint. (R. at 158.) On July 1, 2005, Bell complained of swelling in his left knee and pain in his left calf and thigh. (R. at 165-66.) He underwent a venous doppler ultrasound which was negative for deep vein thrombosis and cysts. (R. at 156.) Bell was diagnosed with monoarticular arthritis and a possible history of trauma to the knee. (R. at 166.) A cortisone injection was administered. (R. at 166.) On July 7, 2006, Bell reported that he was doing well and was stable on Celexa. (R. at 328.) He was diagnosed with major depressive disorder, and his GAF score was assessed at 60. (R. at 328.)

On March 30, 2005, Dr. Brent Miller, M.D., examined Bell. (R. at 124-27.) Dr. Miller reported that Bell walked with a limp. (R. at 126.) Bell was able to get on and off the examination table with some difficulty. (R. at 126.) Dr. Miller diagnosed

degenerative disc disease of the back and possible nerve compression in the neck with left hand weakness with the biceps, triceps and grip strength. (R. at 127.) Dr. Miller reported that Bell could stand and/or walk six hours in a eight-hour workday. (R. at 127.) He noted no limitations on Bell's ability to sit. (R. at 127.) Dr. Miller reported that Bell could lift or carry items weighing less than 10 pounds frequently and 10 pounds occasionally. (R. at 127.) He noted that Bell could occasionally bend, stoop or crouch and that his ability to reach, handle, feel, grasp and finger was limited due to his 4/5 grip strength. (R. at 127.)

On April 11, 2005, Dr. Syed S. Hassan, M.D., a state agency physician, indicated that Bell could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 128-35.) Dr. Hassan reported that Bell could stand and/or walk at least two hours in an eight-hour workday and that he could sit a total of six hours in an eight-hour workday. (R. at 129.) Dr. Hassan reported that Bell could occasionally climb. (R. at 130.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 130-31.) On August 3, 2005, Dr. Alston W. Blount Jr., M.D., another state agency physician, affirmed this assessment. (R. at 136.)

On May 5, 2005, Marcia Grenell, Ph.D., a state agency psychologist, indicated that Bell was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (R. at 137-38.) This assessment was affirmed by Alan D. Entin, Ph.D., another state agency psychologist. (R. at 138.)

That same day Grenell completed a Psychiatric Review Technique form, ("PRTF"), indicating that Bell suffered from an affective disorder. (R. at 141-53.) Grenell indicated that Bell had mild limitations on his daily living activities. (R. at 151.) She indicated that Bell had moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 151.) Grenell also reported that Bell had not experienced decompensation. (R. at 151.) State agency psychologist Entin also affirmed this assessment on August 4, 2005. (R. at 141.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether the claimant: 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairment. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the

claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053( 4th Cir. 1980).

By decision dated December 5, 2006, the ALJ denied Bell's claims. (R. at 16-26.) The ALJ found that the medical evidence established that Bell had severe impairments, namely degenerative disease of the lumbar spine, bilateral foot and ankle disorders, enchondroma of the left hand and major depressive disorder, but he found that Bell did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found at 20 C.F.R. Part 404, Subpart, Appendix 1. (R. at 18-19.) The ALJ found that Bell had the residual functional capacity to perform simple, routine sedentary work that did not require close coordination with others or that did not require him to climb ladders, ropes or scaffolds and only occasionally climb stairs and ramps, stoop, bend or crouch. (R. at 19-20.) The ALJ also found that Bell was limited to 4/5 grip strength in his left, nondominant hand. (R. at 20.) Thus, he found that Bell was unable to perform any of his past relevant work. (R. at 24.) Based on Bell's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Bell could perform, including those of a sedentary vehicle operator, a mechanical assembler and a production inspector. (R. at 24-25.) Thus, the ALJ concluded that Bell was not under a disability under the Act and was not eligible for DIB or SSI benefits. (R. at

-11-

Case 2:07-cv-00061-JPJ   Document 20   Filed 09/09/08   Page 11 of 17   Pageid#: 74

26.)  *See* 20 C.F.R. §§ 404.1520(g), 416.920 (g).

In his brief, Bell argues that the ALJ's decision is not based on substantial evidence of record. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 11-16.) In particular, Bell argues that the ALJ erred by finding that he had the residual functional capacity to perform simple, routine sedentary work that did not require close coordination with others or that did not require him to climb ladders, ropes or scaffolds and only occasionally climb stairs and ramps, stoop, bend or crouch. (Plaintiff's Brief at 11-16.) Bell also argues that the ALJ erred by failing to include all of the limitations noted by Dr. Miller and the state agency physicians. (Plaintiff's Brief at 12-13.) Bell further argues that the ALJ failed to properly evaluate the intensity and persistence of his alleged pain. (Plaintiff's Brief at 15-16.)

Bell argues that the ALJ erred by finding that he had the residual functional capacity to perform simple, routine sedentary work that did not require close coordination with others or that did not require him to climb ladders, ropes or scaffolds and only occasionally climb stairs and ramps, stoop, bend or crouch. (Plaintiff's Brief at 11-16.) In particular, Bell argues that the ALJ erred by not finding an impairment in his ability to use his right hand. In making this decision, the ALJ noted evidence showing a left hand enchondroma, but stressed that there was no documentation of a severe right hand impairment as alleged by Bell. (R. at 21-22.) The record contains only three notations about Bell's right hand, including partial subluxation at the first metacarpal phalangeal joint and bilateral hand pain. (R. at 158, 167, 176.) Nonetheless, Dr. Miller noted that on March 30, 2005, Bell had 4/5 bilateral grip strength.  (R. at  126.) As a result, Dr. Miller stated: "There are

-12-

limitations on reaching, handling, feeling, grasping and fingering due to the 4/5 strength in his grip and his hands." (R. at 127.) Therefore, it appears that Dr. Miller placed this restriction on both of Bell's hands. The ALJ's decision, however, does not mention this finding. Therefore, it appears that the ALJ simply ignored this finding. That being the case, the court cannot determine what, if any, weight the ALJ gave this finding or why he chose to give no weight to the finding. That being the case, I find that substantial evidence does not support the ALJ's finding as to Bell's residual functional capacity, and I recommend remand on this issue.

The ALJ also noted that the record documented conservative treatment and normal or improving clinical evidence in relation to Bell's foot and ankle disorder and back impairment. (R. at 22.) Bell's podiatrist prescribed orthotics, ankle braces, nonsteroidal anti-inflammatory drugs and physical therapy. (R. at 173, 178-79, 272.) MRIs were normal, and x-ray results were consistently normal. (R. at 287-89.) While an MRI performed in September 2003 confirmed mild degenerative desiccation at the L5-S1 level, there were no neurocompressive abnormalities and repeat MRIs conducted 18 months later revealed that the disc bulge had improved and there was no significant impingement or spinal stenosis. (R. at 232, 291-92.) Bell's neurologists reported normal findings and found no neurological deficit associated with his back pain, and his EMG studies were normal. (R. at 180.)

In addition, the record shows that Bell had normal mental status examinations, (R. at 186, 188, 227-28), and repeated GAF scores reflected only moderate symptoms. (R. at 202-03, 220-21, 328.) Furthermore, Bell reported that medication controlled his symptoms of depression. (R. at 177, 328.) "If a symptom can be reasonably

-13-

Case 2:07-cv-00061-JPJ   Document 20   Filed 09/09/08   Page 13 of 17   Pageid#: 76

controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Bell further argues that the ALJ did not properly consider his allegations of disabling pain. (Plaintiff's Brief at 15-16.) Based on my review of the ALJ's decision, however, I find that the ALJ considered Bell's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Bell's subjective

-14-

complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 21-24.) The record is void of evidence of spinal stenosis, degenerative disc disease, nerve root compression, muscle weakness, sensory or reflex loss and positive straight leg raising testing. Based on this, I find that the ALJ considered Bell's allegations of pain in accordance with the regulations. I further find that substantial evidence supports the ALJ's finding that Bell's allegations of disabling pain were not totally credible.

Based on the above, I find that substantial evidence does not exist in this record to support the ALJ's finding that Bell was not disabled, and I recommend that the court deny Bell's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying an award of DIB and SSI benefits and remand this case to the Commissioner for further consideration.

### PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the Commissioner's finding as to Bell's residual functional capacity;

2. Substantial evidence exists in the record to support the Commissioner's finding that Bell did not suffer from disabling pain; and

3. Substantial evidence does not exist in the record to support the Commissioner's finding that Bell was not disabled.

-15-

# RECOMMENDED DISPOSITION

The undersigned recommends that this court deny Bell's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying an award of DIB and SSI benefits and remand Bell's claim to the Commissioner for further consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 9th day of September 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE